UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Amanda Diane Gonzalez,<br><br>            Plaintiff,<br><br>    v.<br><br>Commissioner of Social Security,<br><br>            Defendants. | No. 1:25-cv-00034-KES-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>(ECF No. 12, 14) |

**I.      Introduction**

Plaintiff Amanda Diane Gonzalez seeks judicial review of a final decision of the Commissioner of Social Security denying Plaintiff's applications for social security disability insurance benefits (SSD), and supplemental security income (SSI) pursuant to Titles II and XVI, respectively, of the Social Security Act.[1]

**II.     Factual and Procedural Background**

Plaintiff applied for SSDI benefits on March 26, 2021, and SSI benefits on March 8, 2021. In both applications Plaintiff alleged a disability onset date of December 31, 2015. AR 21. The Commissioner denied the applications initially on October 20, 2021, and on reconsideration on

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Docs. 6, 8.

1

March 28, 2022.  AR 193–200; 209–19.  The ALJ held a hearing on January 11, 2023.  AR 37–67.  The ALJ issued an unfavorable decision on March 15, 2023.  AR 18–36.  The Appeals Council denied review on January 4, 2024 (AR 4–9) and this appeal followed.

### III.  The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or Plaintiff is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given Plaintiff's RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.   The ALJ's Decision

At step one the ALJ found that Plaintiff did not engage in substantial gainful activity since the alleged onset date of December 31, 2015. AR 24. At step two the ALJ found that Plaintiff had the following severe impairments: schizophrenia; bipolar disorder; depressive disorder; anxiety disorder; a neurodevelopmental disorder; shoulder tendonitis and obesity. AR 24. The ALJ found that Plaintiff also has the following non-severe impairments: asthma; moderate obstructive sleep apnea; hypothyroidism; high myopia and polycystic ovarian syndrome. Id.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24–26.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c)

and 416.967(c) with the following limitations:
> she can frequently reach, except for no more than occasional overhead reaching. In addition, the claimant can occasionally climb ramps/stairs and occasionally ladders/ropes/scaffolds. She can occasionally work in environments with fumes, odors, dusts, gases, and other respiratory irritants. She can frequently perform tasks requiring near and distance acuity but cannot perform tasks that require precision vision (such as threading a needle). In addition, the claimant can understand and remember simple tasks and can maintain attention, concentration, and pace for simple tasks. She can have occasional public or coworker contact and can make simple work-related decisions.

AR 26-29

At step four, the ALJ found that Plaintiff had no past relevant work. AR 29. At step five, relying on the Vocational Expert's testimony, the ALJ found that considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform the following jobs existing in significant numbers in the national economy: garment maker, laundry laborer, and linen room attendant. AR 27–28. Accordingly, the ALJ concluded that Plaintiff was not disabled since the alleged onset date of December 31, 2015. AR 31.

V.    **Factual Summary**

1.    **Hearing Testimony**

In college Plaintiff couldn't keep up, and Plaintiff's dyslexia impeded her grammar and English skills. AR 49. Plaintiff struggled with socialization and comprehension. AR 49. Plaintiff couldn't meet requirements despite a tutor. AR 49 50. Plaintiff self-isolates and has few friends. AR 54. Plaintiff has mood disturbances and breakdowns. AR 56. Plaintiff was psychiatrically hospitalized after a physical altercation with a family member and police were involved. AR 58–59.

2.    **Medical Evidence**

On March 24, 2020, Plaintiff visited the ER with psychosis, bizarre behavior, fever, and delirium. AR 558. On October 1, 2021, Dr. Zanutto performed a consultative psychiatric examination. AR 1026. Plaintiff complained of a variety of psychiatric symptoms: crying, sleep disturbance, fatigue, racing heart, mania, low energy and loss of interest. AR 1026-27. Dr. Zanutto noted an involuntary hold for homicidal ideation earlier that year. Id. Plaintiff couldn't name the

4

President nor colors of the U.S. Flag. AR 1029. Plaintiff recalled two of three words after brief delay. Id. Plaintiff had fair insight, anxious mood and affect. Id. Plaintiff was assessed with bipolar disorder, unspecified, provisional. Id. Dr. Zanutto found Plaintiff moderately limited in completing a normal workday or workweek without interruptions from a psychiatric condition. AR 1030. He found Plaintiff moderately limited in social interaction. AR 1030. His stated prognosis for Plaintiff was fair. Id. On January 27, 2021, police took Plaintiff to the ER after Plaintiff assaulted her sister and was placed on an involuntary hold. Id. Plaintiff couldn't provide a history and was assessed with acute psychosis and assaultive behavior. AR 503.

Plaintiff had a mental health visit on May 18, 2022 after a psychotic episode. She was noted to be improving and stable on medications (Seroquel). AR 1084. June 22, 2022 progress notes reflect Plaintiff was disoriented with poor memory and judgment, flat affect and tangential thoughts. AR 1088. Plaintiff was assessed with unspecified psychosis not due to a substance or known physiological condition. Id. December 5, 2022 progress notes indicate disheveled appearance, presented as younger than her actual age, struggled to comprehend basic questions which had to be restated, slow speech and struggled putting thoughts together. AR 1121. Plaintiff was assessed with depression, unspecified, and developmental disorder. AR 1123.

**VI.     Issues Presented**

Plaintiff asserts one claim of error: "The ALJ erred by failing to properly evaluate the opinion evidence proffered by psychiatric consultative examiner, Dr. Zanutto, and by failing to properly develop the record. As a result, the ALJ's mental residual functional capacity is unsupported by substantial evidence." MSJ at 3, ECF No. 12.

**A.     RFC Generally; Medical Opinions**

**1.     Applicable Law**

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of

the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

**2. Analysis**

**a. Summary Dr. Zanutto's Exam and Opinion**

On October 1, 2021, Dr. Zanutto conducted a consultative psychiatric examination arranged by the agency. AR 1026. Plaintiff reported symptoms such as crying spells, disturbed sleep, fatigue, heart racing, mania, lethargy and loss of interest. AR 1026–27. Plaintiff reported that her symptoms started around 2020. AR 1027. Dr. Zanutto noted Plaintiff was placed on an involuntary hold for homicidal ideation earlier that year though there were no other incidents of being a danger

to others, no evidence of self-injurious behavior, and Plaintiff denied suicidal or homicidal ideation. AR 1027.

Plaintiff reported that medication was helpful for her symptoms. AR 1027. Plaintiff struggled somewhat with ADLs but was independent with basic ADLs, did not need help with preparing meals, doing light household chores, and could make change at the store. Upon exam, Plaintiff was neat and appropriately dressed, open to the interview, listened, was calm, exhibited no abnormal behavior, made appropriate eye contact, spoke with normal rate and tone, was alert with no lethargy, was fully oriented in all spheres and her intelligence was average. AR 1028–29.

However, Plaintiff appeared anxious. Plaintiff could spell "world" forward and in reverse but couldn't do serial three subtractions. Plaintiff recalled only two out of three words after a brief delay, repeated only three digits forward and two digits backwards, did not know the colors of the U.S. flag and Insight was fair. Plaintiff reported an anxious mood with congruent affect (moderately anxious). AR 1029. Thought process was linear and thought content was appropriate. AR 1029.

Notably, Dr. Zanutto opined as to the extent of Plaintiff's limitations in performing work activities: 1- understand/remember/perform simple instructions (not significantly limited); 2- understand/remember/perform complex instructions (mildly limited); 3- maintain regular attendance (mildly limited); 4- perform work on a consistent basis (mildly limited); 5- perform work activities without special or additional supervision (not significantly limited); 6- complete a normal workday and work week without interruptions from a psychiatric condition (moderately limited); 7- accept instructions from supervisors (not significantly limited); 8- interact with coworkers and the public (moderately limited); and 9) deal with the usual stressors in a work environment (mildly limited). AR 1030. Dr. Zanutto assessed Plaintiff with a fair prognosis. (AR 1030).

### b. ALJ's Conclusions About the Record and Opinons

The ALJ discussed Dr. Zanutto's opinion as follows:

…Dr. Zanutto indicated that he based his conclusions on his exam findings, interview with the claimant, and review of available records. His opinion is also consistent with the rest of the record, including the claimant's hearing testimony, which <u>reflects good symptom control with prescribed medication, and vice versa</u>….

7

> For this reason, I find Dr. Zanutto's assessment overall persuasive, <u>except for his finding of mild limitations with complex tasks</u>. This is not consistent with the claimant's history of special education services and borderline to low average intelligence.

AR 28 (emphasis added).

As to the required regulatory consideration of supportability, Plaintiff does not specifically dispute the ALJ's finding that Dr. Zanutto supported his opinion, specifically he "based his opinion on" his exam findings, interview and review of records.

As to the required regulatory consideration of consistency with other evidence, Plaintiff disputes the ALJ's finding that the opinion was "consistent with the rest of the record, including the claimant's hearing testimony, which reflects good symptom control with prescribed medication, and vice versa…."[2] Plaintiff contends the record shows uncontrolled psychiatric symptoms. MSJ at 11.

Plaintiff emphasizes the following records: 1- a 5/18/22 visit after a psychotic break, noting improvement and stability on medication[3] (AR 1084); 2- a 6/22/22 visit diagnosing psychosis and noting disorientation, poor memory and judgment,[4] flat affect, tangential thoughts, and a statement that Plaintiff's CPAP system was "full of bugs and completely unusable," which the clinician stated "may represent a delusional belief system." (AR 1088); and 3- a 12/5/22 visit noting history of dyslexia, the need for accommodation in school, struggles with memory, organization, and social skills[5] (AR 1120), slightly disheveled appearance, mental presentation younger than her actual age (AR 1120–21), slow speech, difficulty comprehending basic questions and putting thoughts

---

[2] Later on, Plaintiff returns to the issue of the ALJ's partial rejection of Dr. Zanutto's opinion.
[3] This would seem to illustrate—rather than undermine—the ALJ's point that Plaintiff's conditions were controlled by medication.
[4] Plaintiff does not support the implication that her memory and judgment deficiencies weren't reasonably accounted for in the RFC which specifies simple tasks and simple decision making.
[5] Plaintiff's social limitations are reasonably accounted for in the RFC which specifies the claimant can have occasional public or coworker contact.

8

together, and diagnoses of depression, unspecified and developmental disorder.  AR 1123.

In short, Plaintiff's discussion of this medical evidence is not a persuasive rebuttal to the ALJ's point that Plaintiff's symptoms were controlled by medications.  Even if Plaintiff's interpretation of the record is reasonable, given that the ALJ's interpretation is equally reasonable makes affirmance appropriate.  See Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997) ("The key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.").

Importantly, the ALJ acknowledged most, if not all of Plaintiff's abnormalities as a part of a balanced discussion.  The ALJ noted many facts supporting the ALJ's conclusion such as the limited evidence of complaints and mental impairments prior to December 31, 2018,[6] which Plaintiff does not specifically dispute.[7]  The ALJ also noted reports from the claimant and family members that Plaintiff was doing well until March 2020 when Plaintiff first developed psychiatric symptoms, was hospitalized for several days, diagnosed with schizophrenia and started on Seroquel (B2F/88; B2F/22; B2F/68).

The ALJ noted that in August 2020, Plaintiff denied recurrent symptoms, reported feeling

---

[6] As explained in SSR 17-4p, "Although we [SSA] take a role in developing the evidentiary record in disability claims, claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability…".

[7] December 31, 2018 was Plaintiff's date last insured (DLI). To qualify for SSDI benefits, "Plaintiff's disability onset date must fall prior to [her] date last insured" which is determined based on "quarters of coverage" during the claimant's employment. Flinton v. Berryhill, 2020 WL 5634462, at *2 (S.D.N.Y. Sept. 4, 2020); 20 C.F.R. § 404.315(a).  Generally, "Title II [SSDI] benefits may be paid retroactively for up to 12 months prior to filing of an application. Id. 20 C.F.R. §§ 404.621, 416.335. . Payment of Title XVI [SSI] benefits, however, cannot precede the month following the month of application." Id.  Thus, Plaintiff's SSDI claim could have been retroactively payable back to the alleged disability onset date of December 31, 2015 (if evidence supported disability as of that date).  But for SSDI payments to be payable at all—retroactively or otherwise— she would have to establish disability prior to the December 31, 2018 DLI.  As the ALJ found, there was a dearth of evidence prior to that date.  While the SSI claim doesn't depend on the DLI, the SSI application would only be effective as of the day it was filed:  March 8, 2021.

better overall (B3F/23, 25), and in November 2020 Plaintiff reported "doing well with medications," and her mental status exam was unremarkable (B3F/14–15).  Further, in late January 2021, "out of nowhere" per family members, Plaintiff had a psychotic breakdown, attacked her sister, was found to be a danger to others, was recommended for in-patient admission,[8] though the family did not know whether Plaintiff had been taking her prescribed medications and Plaintiff's urine drug screen was positive for marijuana (B2F/27).

      The ALJ also emphasized a rejection letter from Tulare County Health and Human Services dated November 15, 2022, noting Plaintiff's "mental health condition [did] not meet the medical necessity criteria to be eligible for specialty mental health services" through that agency, though the claimant was encouraged to pursue non-specialty mental health care (Ex. B11E).

      Further, the ALJ discussed that Plaintiff's testimony also supported the finding that Plaintiff's symptoms were well controlled by medication, including: 1- symptoms worsen when she misses doses of her medication and improves[9] when Plaintiff is compliant; 2- Plaintiff still has mood changes and some anxiety on medication, but these are usually "<u>fairly mild</u>."; 3- Plaintiff "does not do well" with "drama" and in "giant crowds," prefers to keep to herself and does not have many friends[10]; 4- Plaintiff also struggles with motivation; and 5- Plaintiff has some difficulties with comprehending information and might need repetitions, but Plaintiff "<u>eventually gets it</u>" and does not need repetitions to <u>understand simple, routine, and familiar tasks</u>.  AR 27 (emphasis added).

      In sum, the ALJ appropriately found that Plaintiff's symptoms were reasonably well

---

[8] Plaintiff was ultimately not admitted but released to her mother because Plaintiff tested positive for Covid. B2F/22; B4F/10, 13
[9] As Plaintiff emphasizes, improvement is relative.  Notwithstanding, the ALJ's observation was not irrelevant.
[10] Social limitations and fear of crowds are reasonably accounted for in the RFC which specifies the claimant can have occasional public or coworker contact.

controlled by medication.  This supports the ALJ's finding that Dr. Zanutto's opinion was well supported by his own examination findings, and consistent with the record as a whole.  It also supports the ALJ's RFC more generally.

### B.     Developing the Record

#### 1.     Applicable Law

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation.  *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150.  A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

#### 2.     Analysis

Plaintiff contends as follows:

> The ALJ's mental residual functional capacity is unsupported by substantial evidence for an additional reason: The ALJ rejected (to varying degrees) all mental opinion evidence pertaining to Plaintiff. (AR 29). Specifically, the ALJ rejected the findings of the state agency mental consultants and found "additional limitations are warranted in this case to better address the complaints of difficulties in social interactions…." (AR 29). Further, the ALJ rejected the opinion of Dr. Zanutto in which Dr. Zanutto limited Plaintiff to only "mild limitations with complex tasks…." (AR 29). The ALJ criticized this finding by Dr. Zanutto as "not consistent with the claimant's history of special education services and borderline to low average intelligence…." (AR 29). These rejections by the ALJ created a critical evidentiary gap. Rather than craft an RFC out of "whole cloth"; the ALJ had a duty to develop the record further

MSJ at 13.

The ALJ found Plaintiff more limited than the medical consultants did.  Hence this does not prejudice Plaintiff notwithstanding that the ultimate outcome was unfavorable.

Relevantly, the RFC need not mirror any particular opinion, it is an assessment formulated

11

by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3). Further, it is not clear in what way Plaintiff believes that the ALJ's rejection of the medical opinions created an "evidentiary gap" that did not previously exist before the ALJ's decision was rendered. The sufficiency of the evidence does not hinge on the ALJ's determination whether to adopt medical opinions.

However, should Plaintiff be referring to the gap in time between Dr. Zannutto's October 1, 2021 consultative examination and the January 11, 2023 hearing (or March 15, 2023 ALJ decision), the argument is not persuasive. There "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020). Specifically, ALJs are nearly always tasked with independently reviewing some medical evidence that was never considered by a medical expert and then forming conclusions about the functional significance of that evidence. That is consistent with the ALJ's role as characterized by the Ninth Circuit. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (the ALJ is responsible for translating and incorporating clinical findings into functional terms). Thus, Plaintiff's contention that the ALJ erroneously formulated the RFC "out of whole cloth," is unpersuasive.

Plaintiff further explains that "Rather than craft an RFC out of 'whole cloth'… the ALJ had a duty to develop the record further" such as by "ordering an updated consultative examination" or "keeping the record open after the hearing to allow supplementation of the record."[11] MSJ at 13 (quoting Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999)).

---

[11] Here, the ALJ did keep the record open for post-hearing submission of new evidence, which Plaintiff does not discuss. See AR 21 ("The claimant's representative informed me about outstanding medical evidence and ongoing efforts to obtain it . . . as these records had not been received by the time of the disability hearing on January 11, 2023, I left the record open to allow additional time for submission . . . The outstanding records were received by February 16, 2023 and were added to the file as Exhibits B8F and B9F.").

Plaintiff's basis for concluding that this duty arose is explained as follows:

> Where the medical evidence is ambiguous or inadequate (as is the case here given the absence of any mental functional assessments which the ALJ did not at least partially reject), the ALJ has a duty to develop the record further. Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001).

MSJ at 13–14.

Plaintiff identifies no support for the parenthetical. The parenthetical is an indirect way of stating that the RFC must mirror a medical opinion, which again is not accurate. If Plaintiff is attributing that principle to Mayes,[12] that case contains no such statement of law. Nor does Mayes suggest that the rejection or adoption of medical opinions creates evidentiary ambiguity or inadequacy. Rather, Mayes involved evidence of a condition that was diagnosed after the administrative hearing:[13]

> Mayes bases her argument that the ALJ's decision was not supported by substantial evidence on Dr. Buehler's herniated disc diagnosis reached five months after the ALJ issued his decision. In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir.1983). Mayes contends that the ALJ should have developed the record and determined that Mayes had herniated discs even before Dr. Buehler reached his diagnosis. Mayes would improperly shift her own burden to the ALJ.
>
> Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)

In sum, the ALJ committed no error in addressing the medical opinions and partially rejecting the same. Further, the ALJ appropriately concluded that the objective and subjective evidence demonstrated that Plaintiff's symptoms were controlled with medication. In the end, the ALJ crafted an RFC which reasonably accounted for Plaintiff's limitations related to task

---

[12] Mayes does support the proposition that the ALJ has a duty to develop the record when the medical evidence is ambiguous or inadequate. Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001).

[13] Further, as indicated, the Mayes panel resolved that issue against the plaintiff. Thus, Mayes is not favorable to Plaintiff's position.

complexity, decision making and social interaction.

### VII. Recommendations

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is as follows:

1. That Plaintiff's motion for summary judgment (Doc. 12) be **DENIED.**
2. That Defendant's cross-motion (Doc. 14) be **GRANTED.**
3. That the decision of the Commissioner of Social Security be **AFFIRMED**.
4. That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

### VIII. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 14, 2025**          /s/ Gary S. Austin
                                                           UNITED STATES MAGISTRATE JUDGE